***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All *Page 2 
the parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. The date of the alleged injury that is the subject of this claim is August 9, 2007. Plaintiff was taken out of work on September 10, 2008.
3. The defendant-employer was insured for workers' compensation by Phoenix Insurance Company at all relevant times herein.
4. Plaintiff's average weekly wage was $349.01 per week, yielding a compensation rate of $232.68 per week, at all relevant times herein.
5. There was an employee-employer relationship between plaintiff and defendant-employer at all relevant times herein.
6. Plaintiff received short-term disability between November 5, 2007, and February 10, 2008, in a gross amount of $264.00 per week, for a total of $3,432.00 during this period.
7. The following exhibits were admitted into evidence at the hearing:
 a. Stipulation #1, pre-trial agreement;
 b. Stipulation #2, IC Forms and medical records;
 c. Stipulation #3, DVD;
 d. Stipulation #4, video summary by Tammy Helms;
 e. Stipulation #5, video summary of surveillance camera timeline;
 f. Stipulation #6, plaintiff's summary of lost compensation and medical expenses;
 g. Stipulation #7, photos.
8. The issues to be determined are as follows: *Page 3 
 a. Whether plaintiff sustained an injury by accident while in the course and scope of his employment with defendant-employer?
 b. If so, to what, if any, workers' compensation benefits is plaintiff entitled to recovery under the North Carolina Workers' Compensation Act?
 ***********
The Pre-Trial Agreement along with its attachments and any additional stipulations are hereby incorporated by reference as though they were fully set out herein.
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was 45 years old and has a college degree. He was also a certified golf professional by the Professional Golf Association of America.
2. Plaintiff sustained a head injury while playing high school football in the 1980s. He was treated at the local hospital and held out of school for one week, but otherwise did well.
3. Plaintiff started working for defendant-employer, a grocery store, on March 2, 2007, as a stock clerk. His job required him to unload the grocery products from trucks, placing them onto the shelves for customer sales. He normally worked from 9:00 p.m. to 6:00 a.m.
4. On August 9, 2007, plaintiff was moving a cart stacked with inventory from the back inventory room and as he was coming through a door a case of soup cans fell off the top of the stack and hit him in the head and right shoulder. Plaintiff caught the box with his right arm *Page 4 
and shoulder and pushed the box back onto the top of the cart. Plaintiff was dazed from the case of soup hitting his head.
5. No one witnessed the incident, but defendant-employer had video cameras recording the premises. As to this incident, the angle of the videotape was poor and did not give a clear view of what happened. However, the video did show that the cart was stacked with inventory about two feet or so above plaintiff's head. The videotape also showed that plaintiff paused after coming through the doors to the inventory room for a few seconds, and that plaintiff shifted from the left side of the cart to the right side of the cart.
6. Plaintiff reported the accident to his supervisor, Mr. James Dertinger, at approximately 1:30 a.m. in the morning during his shift on August 9, 2007. Plaintiff told Mr. Dertinger that he was hit in the head when a case of soup fell off the back of the cart. Plaintiff completed and submitted an accident report the next day.
7. By the time plaintiff completed his shift, he had a headache and his neck was hurting.
8. Mr. Dertinger took Plaintiff to see Dr. Larry Smith at Shelby Family Practice on August 13, 2007. Dr. Smith noted that plaintiff told him that a case of soup cans had fallen off a cart he was pushing at work and hit him in the head and right shoulder. Plaintiff complained of right arm pain at this appointment, and Dr. Smith noted a decreased range of motion on physical exam. Dr. Smith recommended diagnostic testing, including x-rays, an MRI, and a CT-scan. Dr. Smith diagnosed plaintiff's condition initially as cervical strain but later noted that he was having pain radiating into his right arm, headaches and upper thoracic strain resulting from his head and neck trauma. After plaintiff was seen and evaluated by Dr. Klein, Dr. Smith noted that he felt *Page 5 
that plaintiff had sustained a closed head injury as a result of being hit in the head by the case of soup cans.
9. As a result of his injuries plaintiff was not able to work from November 2007 through April 2008, for which he received short term disability benefits from a policy that was fully funded by defendant-employer. Plaintiff is not making any claim for compensatory benefits for this period of time.
10. When plaintiff's condition did not improve, Dr. Smith referred him to Dr. Kevin Klein, a neurologist, and one of the injuries Dr. Smith noted in his letter to Dr. Klein was plaintiff's right shoulder. Plaintiff was seen and evaluated by Dr. Klein on October 15, 2007.
11. Thereafter plaintiff was referred to Dr. Carlton and was seen and evaluated by him on February 7, 2008 during which time he related his injury to the accident on August 9, 2007 while at work with defendant-employer. Dr. Carlton diagnosed plaintiff with a concussion and post-traumatic headaches, including problems with concentration, impulsivity, and problems organizing, and recommended that plaintiff undergo neuropsychological testing to confirm the extent of deficits from plaintiff's head injury. Dr. Carlton noted that plaintiff's prior head injury from high school football in the 1980s placed him at a greater risk for having more severe deficits from a subsequent head injury.
12. Dr. Madison released plaintiff return to work on April 4, 2008, at which time plaintiff did not return to work for defendant-employer but found another job as a golf caddy at Trump National Golf Club in New Jersey. Plaintiff lost this job in August 2008, when he lost consciousness on the golf course from his head injury and consequent symptoms.
13. Dr. Carlton referred plaintiff to Dr. Mahalick. Plaintiff underwent neuropsychological testing administered by Dr. David Mahalick, Ph.D. on May 29 and June 11, 2008. *Page 6 
Dr. Mahalick's neuropsychological testing revealed that Plaintiff has had numerous deficits and functional compromises as a result of his head injury on August 9, 2007, including but not limited to deficits in sensorium, attention/concentration, motor/visuomotor functioning, verbal processing, visuospatial and visuoperceptual functioning, mnestic functions, executive/higher integrative thought, and personality/psycho-emotional functioning.
14. Dr. Mahalick opined that Plaintiff presented at the neuropsychological testing with unequivocal evidence of neurobehavioral and neuropsychiatric dysfunction that is the direct result of and causally related to blunt injury to the head while at work on August 9, 2007. Dr. Mahalick further opined that Plaintiff may have suffered from a subcortical CVA as a result of his blunt trauma injury. According to Dr. Mahalick, Plaintiff's quality of life may be improved given the opportunity to pursue cognitive remediation therapy, psychotherapy, neurologic consultation, physiatry follow-up, Otolaryngology consultation, neuropsychological evaluation follow-up.
15. The Full Commission finds based upon the greater weight of the evidence that Plaintiff's accident on August 9, 2007 while working for defendant-employer more likely than not caused the functional deficits revealed by Dr. Mahalick's neuropsychological testing and that Plaintiff needs additional medical treatment for his traumatic brain injury and its effects.
16. Plaintiff was also treated by Dr. Allan Tiedrich, a physiatrist. Dr. Tiedrich ordered an MRI of plaintiff's injured shoulder to be performed. The MRI revealed a possible labral or SLAP tear, and as a result, Dr. Tiedrich recommended that plaintiff consult an orthopedic surgeon to repair the SLAP tear. *Page 7 
17. Plaintiff has been medically unable to work in any employment from September 10, 2008, when Dr. Tiedrich took plaintiff out of work, through the present time and continuing because of his head and shoulder injury.
18. Plaintiff was seen by Dr. Jerry Barron, an orthopedic surgeon, on December 29, 2008. Dr. Barron's findings on both clinical presentation and after review of plaintiff's MRI were consistent with Dr. Tiedrich's findings, and Dr. Barron recommended surgery. Plaintiff has not been able to have the surgery because of financial constraints.
19. Plaintiff also consulted Dr. John Welshofer, MD, another physiatrist. Dr. Welshofer's findings, which included results from EMG testing, were consistent with an injury to plaintiff's shoulder and, specifically, a SLAP lesion. Dr. Welshofer recommended additional testing and treatment to diagnose whether plaintiff has any cervical pathology.
20. Plaintiff sustained an injury by accident while in the course and scope of his employment with defendant-employer on August 9, 2007 and he sustained injuries to his head, shoulder and back.
21. Greater weight is given to the opinions and testimony of Dr. Tiedrich, Dr. Mahalick, Dr. Barron, Dr. Carlton, and Dr. Welshofer and they are of the opinion that the conditions for which they have and continue to treat or recommend treatment for plaintiff are a direct result of plaintiff's injury by accident on August 9, 2007.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 8 
1. Plaintiff sustained an injury by accident while in the course and scope of the employment with defendant-employer in which he injured his shoulder, head, and neck on August 9, 2007. N.C. Gen. Stat. § 97-2(6).
2. Defendants are liable for payment of medical and indemnity compensation to plaintiff as a result of his compensable injury. N.C. Gen. Stat. §§ 97-25, 97-29, 97-93.
3. Plaintiff has been totally disabled from September 10, 2008 and continuing, until he returns to suitable employment or until further order of the Commission. N.C. Gen. Stat. §§ 97-18.1, 97-29;Russell v. Lowes Product Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. Plaintiff is entitled to medical compensation for his compensable injuries, which is reasonably necessary to effect a cure or provide relief, including but not limited to the treatment provided and recommended by Dr. Barron, Dr. Welshofer, and Dr. Mahalick. N.C. Gen. Stat. § 97-25.
5. Plaintiff's average weekly wage has been properly stipulated to at $349.01. N.C. Gen. Stat. § 97-2(5).
6. Defendants are not entitled to a credit for short-term disability benefits paid to plaintiff before September 10, 2008. N.C. Gen. Stat. § 97-42; Moore v. Federal Express,162 N.C. App. 292, 590 S.E.2d 461 (2004).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorneys' fees approved herein below, defendants shall pay compensation to plaintiff in the amount of $232.68 per week beginning on September 10, 2008 *Page 9 
and continuing until plaintiff returns to suitable employment earning his pre-injury average weekly wage or until further Order of the Industrial Commission.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of his injury by accident when the medical bills have been submitted according to established Industrial Commission procedures, this includes but is not limited to the treatment and recommendations for additional treatment by Dr. Mahalick, Dr. Welshofer, and Dr. Barron. With respect to past treatment, Defendants shall pay all of plaintiff's medical providers pursuant to the Industrial Commission's fee schedule, and plaintiff shall be reimbursed for his out-of-pocket expenses directly by defendants.
3. An attorney's fee in the amount of 25% in hereby approved for plaintiff's counsel, which shall be deducted from the compensatory award to plaintiff and paid directly to plaintiff's counsel of record. As to any accrued compensation, plaintiff's attorney shall be paid in a lump sum directly.
4. Defendants shall pay the costs.
This the 8th day of July 2010.
 S/__________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/__________________ DANNY LEE McDONALD COMMISSIONER *Page 10 
 S/__________________ DIANNE C. SELLERS COMMISSIONER *Page 1